UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Town of Wolfeboro

    v.                                      Civil No. 12-cv-130-JD
                                            Opinion No. 2013 DNH 111

Wright-Pierce

O R D E R

The Town of Wolfeboro brought suit against Wright-Pierce, the company that designed a wastewater disposal system for the town, alleging professional negligence, breach of contract, negligent misrepresentation, and breach of warranty.  Wolfeboro moves for leave to amend its complaint to add claims of fraud, fraudulent misrepresentation, and gross negligence, and a claim that Wright-Pierce violated the New Hampshire Consumer Protection Act, RSA 358-A.[1]  Wright-Pierce objects to the motion to amend, arguing that Wolfeboro has not shown good cause for the delay in filing the motion, that the amendments are brought in bad faith, and that the amendments are futile.  Wolfeboro also moves to supplement its motion to amend, and Wright-Pierce objects.

---

[1] Wolfeboro initially moved to amend its complaint based on the liberal standard for amendments provided by Federal Rule of Civil Procedure 15(a).  Because the scheduling order deadline for amending pleadings was November 30, 2012, the court denied the motion without prejudice to filing a properly supported motion.

Background[2]

As alleged in the complaint, Wolfeboro operates a wastewater treatment facility for the town.  In April of 2005, the New Hampshire Department of Environmental Services ("NHDES") ordered Wolfeboro to submit a Wastewater Treatment and Disposal Management Plan by December 31, 2005.  Wolfeboro was required to bring its wastewater treatment facilities into compliance with the Water Pollution Act and RSA 485-A and to submit a plan and schedule to meet future capacity requirements for wastewater treatment by May 1, 2007.  Wolfeboro hired Wright-Pierce to assist Wolfeboro in responding to and complying with the NHDES order.

Wright-Pierce began work on the wastewater treatment project in December of 2005.  In April and May of 2006, Wolfeboro entered into additional contracts with Wright-Pierce for services related to the wastewater project.  Wolfeboro alleges that Wright-Pierce did not fully and adequately investigate the potential sites for effluent discharge and made other errors in developing and implementing the project.

---

[2]The background information is a summary of allegations in the complaint for purposes of this order only and does not provide factual findings or a factual background for any other purpose.

Wright-Pierce submitted a preliminary design report and three engineering reports in March of 2007 for rapid infiltration basins as part of the disposal system.  Based on the reports, Wright-Pierce obtained NHDES approval for construction of the basins.  Three rapid infiltration basins were completed in 2009 and operation began on March 3, 2009.  On April 20, 2009, Wolfeboro staff saw that one area had a "slope failure," meaning that the system was not working properly.  Other defects were found on June 6, 2009.  Wolfeboro could not operate the wastewater disposal system as it was designed to operate and had to construct two additional basins to remedy the problems with the system Wright-Pierce designed.

I.  <u>Motion to Supplement</u>

After filing its motion to amend, Wolfeboro was provided with additional discovery materials from Wright-Pierce's consultant, Jesse Schwalbaum, on July 3, 2013, which it had first requested in a deposition subpoena, duces tecum, served on February 20, 2013.  Wolfeboro then moved to supplement its motion to amend to add documents produced by Schwalbaum.  Wright-Pierce objects to the motion to supplement on the grounds that "Wolfeboro should not be given carte blanche by this Court to

endlessly brief its Motion to Amend the Complaint" and that the additional documents do not support Wolfeboro's claims.

The additional documents are an email dated February 6, 2007, from Schwalbaum to Gary Smith at Wright-Pierce about the limits of the load rate for the waste disposal sites, Gary Smith's response, and a note hand written by Schwalbaum that is dated June 2, 2009. Wolfeboro interprets the emails and the note as supporting its new claims in the proposed amended complaint. Wright-Pierce provides benign explanations for the documents.

Because the documents were not produced until July 3, Wolfeboro could not have included them in its motion to amend the complaint. Despite Wright-Pierce's explanations of the documents and its claim of prejudice, the late disclosure of the documents, along with no suggestion that Wolfeboro knew or should have known of the documents earlier, provide good cause to allow Wolfeboro to supplement its motion to amend. See, e.g., Insight Tech., Inc. v. SureFire, LLC, 2008 WL 4526185, at *2-*5 (D.N.H. Oct. 2, 2008) (good cause necessary to supplement previously filed motion).

II. Motion to Amend

When a party seeks leave to amend pleadings after the deadline for amendment in the scheduling order, the moving party

4

first must show good cause to modify the scheduling order.  Fed. R. Civ. P. 16(b)(4); Flores-Silva v. McClintock-Hernandez, 710 F.3d 1, 3 (1st Cir. 2013).  Good cause, for purposes of modifying a scheduling order, "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent."  Id.  The court will deny leave to amend if the amendment is proposed in bad faith or would be futile.  Calderon-Serra v. Wilmington Tr. Co., 715 F.3d 14, 19 (1st Cir. 2013).

In the original complaint, Wolfeboro alleged claims of professional negligence, breach of contract, negligent misrepresentation, and breach of warranty.  Wolfeboro moves to amend its complaint to add claims that Wright-Pierce was grossly negligent, violated the New Hampshire Consumer Protection Act, engaged in a scheme to defraud Wolfeboro, and fraudulently misrepresented the capacity of the disposal system that it designed.  Wolfeboro contends that it has good cause to modify the scheduling order to allow its late motion for leave to amend because it received a disc of discovery information from Wright-Pierce in January of 2013 that provided grounds for the new allegations and claims.  In response, Wright-Pierce contends that good cause is lacking and that the new claims are alleged in bad faith and would be futile.

A. Good Cause

The Rule 16(b)(4) good cause standard requires the moving party to show that he has acted diligently. O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004). Although diligence is the primary focus, prejudice to the opposing party caused by the delay is also relevant. Id. Delay may be justified when it was caused by the opposing party's production of critical information through discovery after the scheduling deadline. See StockFood Am., Inc. v. Pearson Educ., Inc., 2012 WL 5986791, at *9 (D. Me. Nov. 29, 2012); Keele v. Colonial Imports Corp., 2012 WL 2192449, at *1 (D.N.H. June 14, 2012).

As is noted above, the deadline for amending pleadings in this case was November 30, 2012. In response to discovery requests by Wolfeboro, Wright-Pierce allowed Wolfeboro's counsel to inspect twelve bankers boxes of documents and produced a disc of 18,000 electronic documents in January of 2013, which included internal emails that are the bases of Wolfeboro's new allegations and claims. The discovery included 100,000 pages. Wolfeboro represents that until those emails were produced it did not know and could not have known "that WP had manipulated and concealed problematic data from Wolfeboro during the project's design and construction."

Wolfeboro argues that it acted with due diligence in filing its initial motion to amend on April 23, 2013, because of the time necessary to review the documents produced by Wright-Pierce. It also contends that no prejudice will result because discovery will not close until November 1, 2013.

Wright-Pierce argues that Wolfeboro should have requested the discovery earlier and that the four months between disclosure of the documents on the disc and filing the motion to amend shows that Wolfeboro was not diligent. Wright-Pierce also contends that Wolfeboro's new claims are simply "rehashing" or "repackaging" allegations already in the complaint that Wright-Pierce artificially depressed conditions in the model of the disposal system and under predicted the likelihood of a break out. Wright-Pierce asserts that it will be prejudiced because the deadline for disclosing expert witnesses has passed, and it will need experts to address the new claims.

To show good cause, the moving party must have been diligent in seeking the information that underlies the proposed amendment as well as in moving to amend. Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241-42 (11th Cir. 2009). The deadline for amending the pleadings was November 30, 2012. The parties submitted a supplemental electronic discovery plan on October 5, 2012, which was approved on October 9, 2012. The plan provided

the process and procedures for preserving and producing electronically stored information.  Wolfeboro requested production of documents, which included the emails that are the subject of the motion to amend, on November 29, 2012.  Wright-Pierce responded to the request in January of 2013.  These circumstances do not necessarily show a lack of diligence.

The four-month delay between production of the emails that form the basis of Wolfeboro's new claims and the date Wolfeboro filed the original motion to amend is significant.  See Wang Hartmann Gibbs & Cauley, PC v. Silver Point Capital, L.P., 2009 WL 3517674, at *4 (C.D. Cal. Oct. 26, 2009).  The volume of discovery that Wright-Pierce produced in January, however, required time to review and to consider the implications for the case.  Nothing in the original allegations, which focus on negligence and breach of contract, suggests that Wolfeboro was aware of the grounds for its new claims before it discovered the emails on the disc that Wright-Pierce disclosed in January.

Therefore, Wolfeboro has shown good cause for the delay in moving to amend the scheduling order.

B.  Bad Faith and Prejudice

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment

and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  In re Western States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 737 (9th Cir. 2013); see also Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).  "Prejudice to the opposing party remains relevant but is not the dominant criterion."  O'Connell, 357 F.3d at 155.

Wright-Pierce argues that the motion to amend should not be allowed because Wolfeboro is acting in bad faith.  In support, Wright-Pierce contends that Wolfeboro knowingly overloaded the disposal sites in violation of the prescribed limits, that emails cited in support of the new claims do not support Wolfeboro's interpretations of gross negligence and fraud, and that Wolfeboro is "cherry picking" the evidence when it knows other evidence is contrary to the new claims.  Wolfeboro responds that Wright-Pierce is misrepresenting the circumstances leading to failure of the disposal sites and misrepresenting the meaning of the emails.

Based on the record presented for purposes of the motion to amend, the meaning of the emails and the import of the parties' conduct is not sufficiently clear to support Wright-Pierce's charge of bad faith.  Therefore, the motion cannot be denied based on bad faith.

Wright-Pierce also argues that it will be prejudiced if Wolfeboro is allowed to add the four new claims now, after the deadline for expert disclosure has passed, because expert testimony will be necessary to address the claims. Wolfeboro contends that there would be no prejudice because discovery is ongoing, with the deadline on November 1, 2013.

That additional discovery will be needed to address new claims is not a sufficient reason, standing alone, to deny a motion for leave to amend. CitiMortgage, Inc. v. Chicago Bancorp, Inc., 2013 WL 3338501, at *3 (E.D. Mo. July 2, 2013). To the extent additional expert discovery is necessary to address the new claims, the parties can propose stipulated deadlines for expert disclosures and related discovery as an amendment to the scheduling order.

C. Futility

Wright-Pierce contends that the new claims are futile because the new claims are not plausible, Wolfeboro cannot prove fraud, Wolfeboro's allegations do not state a violation of RSA 358-A, and the fraud claims are not pleaded with sufficient particularity. A motion to amend a complaint will not be allowed if the new claims would be futile. Univ. Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007). Futility of the

new claims is reviewed under the dismissal standard of Federal Rule of Civil Procedure 12(b)(6).  Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006).

For purposes of a motion to dismiss, the court "separate[s] the factual allegations from the conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely conceivable, case for relief."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotation marks omitted).  "If the facts alleged in [the complaint] allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged, the claim has facial plausibility."  Id. (internal quotation marks omitted).  In addition, the circumstances that support claims of fraud must be alleged with particularity.  Fed. R. Civ. P. 9(b).

1. Plausibility

Wright-Pierce challenges the new allegations made in paragraphs 97, 100, and 102 as failing to plausibly support Wolfeboro's claims of fraud and fraudulent misrepresentation. Wright-Pierce argues that other evidence shows that the meaning Wolfeboro ascribes to internal Wright-Pierce emails is not plausible because Wright-Pierce's interpretations of the

11

circumstances provide an obvious alternative and legitimate explanation. Wolfeboro contends that Wright-Pierce continued to represent to Wolfeboro that the results from the models of the disposal sites had good results when the models actually showed failures and that Wright-Pierce participated in overloading the waste disposal sites.

In Bell Atl. Corp. v. Twombly, as cited by Wright-Pierce, the court concluded that the allegations in the complaint did not sufficiently support the plaintiff's conspiracy theory to nudge the claim beyond being merely conceivable when legitimate goals and actions were more strongly suggested. 550 U.S. 544, 564-70 (2007). Although the parties interpret the evidence differently, the circumstances and appropriate inferences here do not obviously make Wolfeboro's claims implausible.[3]

2. Fraud - Reliance

To prove fraud and fraudulent misrepresentation, the plaintiff must show that the defendant knowingly made a false representation, intending the plaintiff to rely on it, and that

---

[3]If the circumstances are as obvious as Wright-Pierce believes them to be, the claims may be challenged in the context of summary judgment, which can be supported and opposed with additional evidence to show what happened and what the parties understood and intended.

12

the plaintiff was injured by his justifiable reliance on the misrepresentation. Tessier v. Rockefeller, 162 N.H. 324, 332 (2011). Wright-Pierce contends that Wolfeboro failed to allege that it justifiably relied on any representations Wright-Pierce made. Wright-Pierce also contends that the evidence will show that Wolfeboro "made a conscious decision to overload the [rapid infiltration basins], and did not rely upon Wright-Pierce's information in the Phase Three Report," which Wright-Pierce interprets to warn against any discharge greater than 600,000 gallons per day.

Wright-Pierce is correct that Wolfeboro does not include an allegation as part of its fraud claim in Count VI that it justifiably relied on Wright-Pierce's allegedly fraudulent conduct. Wolfeboro did not address that omission in its reply. Therefore, Count VI is futile for failing to allege all elements of a fraud claim.

In Count VII, Wolfeboro alleges fraudulent misrepresentation. Wright-Pierce acknowledges that Wolfeboro includes an allegation of justifiable reliance in support of fraudulent misrepresentation but argues that the evidence will not support that claim. As is discussed above, whether Wolfeboro can prove its claim is a matter that is better addressed by a motion for summary judgment.

3. <u>RSA 358-A and Gross Negligence</u>

Wright-Pierce contends that Wolfeboro's claim under RSA 358-A is futile because Wolfeboro does not allege circumstances beyond an ordinary breach of contract. To be actionable under RSA 358-A, "the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." <u>Axenics, Inc. v. Turner Const. Co.</u>, 164 N.H. 659, 675-76 (2013) (internal quotation marks omitted). Fraudulent misrepresentations made to induce a business relationship or to maintain the relationship based on deception in some circumstances can violate RSA 358-A. <u>State v. Moran</u>, 151 N.H. 450, 453-54 (2004). Therefore, Wolfeboro's claim under RSA 358-A is not futile.

Wright-Pierce also asserts that Wolfeboro's gross negligence claim is futile but provides no support for that charge.

4. <u>Particularity</u>

"To satisfy Rule 9(b) pleading requirements, the complaint must specify the time, place, and content of an alleged false representation." <u>United States v. Guidant Corp.</u>, 718 F.3d 28, 35 (1st Cir. 2013) (internal quotation marks omitted). Allegations of fraud may be based on personal knowledge or on information and belief. <u>United States v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220,

14

226 (1st Cir. 2004) (abrogated on other grounds by Allison Engine Co. v. United States, 553 U.S. 662, 671-72 (2008)). When fraud allegations are based on information and belief, however, the complaint must also allege the factual basis for the belief. Melrose-Wakefield Hosp., 360 F.3d at 226.

 Wolfeboro alleges that Jesse Schwalbaum of Watershed Hydrogeologic Inc. was working for Wright-Pierce to develop a computer model of a site for a rapid infiltration basin as part of the wastewater treatment plan. On February 4, 2007, Schwalbaum reported to Wright-Pierce by email that the computer model he was working on showed a "break out" at 600,000 gallons per day and suggested that he "could make the breakout go away by opening up the drains, increasing the K values, or reducing the discharge." Proposed Am. Complaint ¶¶ 91-93. In paragraph 95, Wolfeboro alleges, based on information and belief, that Schwalbaum altered the computer model as described in his email. On February 6, Wright-Pierce discovered an error in the data provided to Schwalbaum for the model.

 Wolfeboro further alleges that the errors and problems were not reported to Wolfeboro. Despite the lack of model results supporting the result Wright-Pierce wanted, Wright-Pierce's internal emails suggest that it proceeded with the planned

15

loading rate to serve its own interests.[4]  When David Ford from Wolfeboro asked on February 8 about the computer model results, Wright-Pierce reported that the model showed that the site can take up to 600,000 gallons per day.

Wolfeboro alleges that more false statements were made on February 14 and February 20 and that internal Wright-Pierce emails showed that Wright-Pierce knew the site could not handle 600,000 gallons per day but did not inform Wolfeboro.  Wolfeboro alleges that Wright-Pierce's report in March included knowingly false statements about the load capacities and that Wright-Pierce made additional knowingly false statements about repairing the site after it failed on June 16, 2009.

In the context of the proposed amended complaint, which is based on identified email exchanges and other communications, the allegations are sufficiently particular to meet the requirements of Rule 9(b).  To the extent any confusion or ambiguity remains, those issues may be addressed in discovery.

---

[4]Wolfeboro notes that the internal emails indicate that Wright-Pierce wanted higher loading rates in order to exceed the loading rate used in another project and to make Wright-Pierce the designer of the project with the highest loading rate in the country.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to supplement (document no. 37) is granted. The plaintiff's motion to amend (document no. 28) is granted except that Count VI, Fraud, is futile as alleged, and therefore is struck from the proposed amended complaint.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

August 20, 2013

cc: David H. Corkum, Esquire
 Rhian M.J. Cull, Esquire
 John W. Dennehy, Esquire
 Patricia B. Gary, Esquire
 Matthew F. Lenzi, Esquire
 Kelly Martin Malone, Esquire
 Seth Michael Pasakarnis, Esquire